# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO

## CHAPTER 13 PLAN
## Original

**Tab through Plan to fill in all necessary information.**
**Then, unsecure form (online instructions available) to fill in tables and Special Plan Provisions.**

**Debtor(s) Name:**  **Shirley L Magee**                    **Case No.** _____

**Above Median Income:** ☐                    **Below Median Income:** ☒
**No deviation of the formatted Plan is allowed except as provided in Paragraph 19,**
**"Special Plan Provisions".**

**Debtor is eligible for discharge under § 1328(f) unless otherwise marked below.**

☐    No, Debtor is not eligible for discharge under § 1328(f).

> **You should read this Plan carefully. Confirmation of this Plan by the Bankruptcy Court may modify your rights by providing for payment of less than the full amount of your claim, by setting the value of the collateral, both real and personal property, securing your claim, by providing for a treatment of your claim contrary to your current status, and/or by setting the interest rate on your claim. The confirmation hearing in this case shall include a valuation hearing pursuant to 11 U.S.C. §506(a) and Bankruptcy Rule 3012. The Court may confirm this case if no objection to confirmation is filed within fourteen (14) days after the §341 Meeting of Creditors is concluded [(L.B.R. 3015-3(a)].**
>
> **Your rights may be affected by the Plan and upon confirmation you will be bound by the terms of this Plan. You should read the provisions in this Plan carefully (especially the Special Plan Provisions of Paragraph 19) to ensure that you protect your rights and understand the provisions of this Plan and file any appropriate response or objection in a timely manner pursuant to the guidelines set forth in this Plan, the L.B.R. or the Bankruptcy Code.**

Creditors changing their "Notice' address or "Payment" address must file with the Clerk's Office a Notice of Changed Address in each case the address is changing. A copy of this form is on the Trustee's website at: www.Dayton13.com.

If this is a joint case, the estates will be consolidated for administration purposes, 11 U.S.C. §302(b).

**1.    Plan Payment and Length** - The Debtor(s) shall pay to the Trustee all projected disposable income in the amount of $ **3,600.00** each month and **the Plan must project for thirty-six (36) - sixty (60) months if Below Median Income and sixty (60) months if Above Median Income, unless 100%, but not to exceed five (5) years.**

☒ **Below Median Income:** Unless the allowed unsecured claims are paid 100%, the total plan payments shall not be less than the sum of 36 months in a Below Median Income case of confirmed monthly plan payments which are available for payment of administrative expenses and claims exclusive of the Trustee disbursed payments on continuing real estate mortgages; and, the plan will not terminate in any event earlier than the payment of **10** % to each allowed pre-petition unsecured claim.

**OR (but NOT both paragraphs)**

☐ **Above Median Income:** Unless the allowed unsecured claims are paid 100%, the total plan payments shall not be less than the sum of 60 months in a Above Median Income case of confirmed monthly plan payments which are available for payment of administrative expenses and claims exclusive of the Trustee disbursed payments on continuing real estate mortgages; and, the plan will not terminate in any event earlier than the payment of ___% for non-priority unsecured creditors.

This provision does not prohibit the debtor from pre-paying the plan before 36 or 60 months of plan payments.

The length of the Plan will be determined from the time that the first payment under the original confirmed plan was due, which shall be deemed to be the first scheduled Section 341 Meeting of Creditors.

**2.    Effective Date of Plan and Modification of Plan** - The effective date of the plan shall be the date of the confirmation of a plan.

**3.    Filing of Proof of Claim, Allowance and Payment of Claims** - Administrative expenses- Independent appraisals of real estate, as requested by the debtor herein, shall be paid as an administrative expense pursuant to 11 U.S.C. §503 upon the timely filing of a proof of claim.

**4.      Pre-Confirmation Adequate Protection Payments and Lease Payments** – The following pre-confirmation adequate protection payments on claims secured by personal property and pre-confirmation lease payments for leases of personal property shall be paid by the Trustee to the below listed creditors without entry of an Order of the Court.  The Debtor proposing pre-confirmation payments will immediately commence plan payments to the Trustee by the §341 Meeting of Creditors by cashiers check, money order or certified check.  Creditors must file a proof of claim to receive payment. The Trustee is entitled to receive his fees on these payments.

| Name and Address of Creditor* | Property Description | Interest Rate | Monthly Payment Amount |
|---|---|---|---|
| **-NONE-** | | Item 8 Unless Otherwise Specified | |

**Note:  Adequate Protection Payments should provide an amount to offset any depreciation of the asset. A recommended amount is 1.5% of the amount to be paid in the plan and the amount must be stated in the "Monthly Payment Amount". Any Pre-Confirmation lease payment will not be paid additional interest.**

**\*Paragraphs 5(D) or 5(E) must also be completed.  If you provide Pre-Confirmation Adequate Protection payments, you must also provide for monthly payments in paragraphs 5(D) or 5(E).**

**5.      Classification of Claims and Sequence of Payments** - Subject to Item 4., all non-mortgage Class 1 payments should be calculated for payment beginning with the month of confirmation, if the Class 1 claim has been filed, otherwise from the month of the filing of the claim. Claims shall be classified and paid when allowed, except as otherwise herein provided or otherwise ordered by the Court, as follows:

<u>Class 1:</u> Scheduled claims for which the plan designates specific monthly payments –

   **A. Domestic Support Obligations:**
      **(1) Designate Priority Claims under §507(a)(1)(B)**
         (a) ☒ None.
         (b) Trustee disburse ☐ Debtor disburse ☐
         (c) The names, addresses and phone number of the holder of ANY domestic support obligation as defined in Section 101(14A): (including child support, spousal support, debts ordered paid per separation agreement or divorce decree.)

| Name | Address, City, State and Zip Code | Telephone Number | State of the Child Support Enforcement Agency Which Has Jurisdiction | Monthly Payment Amount |
|---|---|---|---|---|
| | | | | |

         **(d)  The debtor is required to pay all  post-petition domestic support obligations <u>directly</u> to the holder of the claim and <u>not</u> through the Chapter 13 Trustee.**
         **(e) If the debtor becomes subject to a Domestic Support Obligation during the term of his or her Chapter 13 Plan, the Debtor <u>shall</u> notify their attorney and the Chapter 13 Trustee's Office  and by Notice to the Court of the name, address and phone number of the holder of such obligation.**

      **(2)  Arrearages owed to Domestic Support Obligation holders or governmental units under Section 507(a)(1)(A) and (B):**
         (a) ☒ None.
         (b) Trustee disburse ☐ Debtor disburse ☐
         (c) Name of holder of Domestic Support Obligation Arrearage Claim or assigned to or owed to a governmental unit and estimated arrears:

| Name of Creditor | Estimated Arrearage Claim | State of the Child Support Enforcement Agency Which Has Jurisdiction | Monthly Payment Amount |
|---|---|---|---|
| | | | |

   **B. Regular mortgage payments secured by real estate** should be calculated for payment after confirmation starting from the month following the month of the filing of the petition.

      **(1) Mortgage Proof of Claim.**  If regular monthly payments to a mortgage creditor are to be disbursed by the trustee, <u>or there is an arrearage as of the petition filing date,</u> the mortgage proof of claim shall include <u>Official Form B10 Mortgage Proof of Claim Attachment</u> or, in the alternative, provide the needed information for the Trustee and Debtor to review the Proof of Claim as to any escrow, principal balance, current payment, arrearage, fees and other charges.

      **(2) Change in Regular Monthly Payments to Mortgage Creditor.**  If there is any change in the regular monthly payment, the mortgage creditor shall file with the court <u>Official Form B10 (Supplement 1) Notice of Mortgage Payment Change</u> as a supplement to the proof of <u>claim</u> and serve the debtor, debtor's attorney and Chapter 13 Trustee no later than twenty-one (21) days prior to the effective date of the change.  The form is required whether the security interest is in the debtor's principal residence or other piece of real property.  This form may be found as part of the Local Bankruptcy Rules for the Southern District of Ohio or the Dayton Chapter 13 website: www.dayton13.com.

**C. Executory Contracts/Leases**

☒ None.

(1) The Debtor rejects the following executory contract:

**REJECTION OF LEASE**

| Name of Creditor | Property subject to executory contract |
|---|---|
|  |  |

(2) The debtor assumes the executory contract/lease referenced below and provides for the regular contract/lease payment. **The assumption of the executory contract/lease is only as to the regular monthly payments and not the option to purchase which must be exercised pursuant to the Local Bankruptcy Rules and by separate pleading. The Trustee is authorized to only disburse the regular monthly payments and arrearage amount and not the option to purchase amount.**

☐ Chapter 13 Trustee Disburse
☐ Debtor disburse
[See L.B.R. 3015-1(C)].

Any pre-petition arrearage will be cured in monthly payments prior to the expiration of the lease as noted below:

**ASSUMPTION OF LEASE**

| Name of Creditor | Property subject to executory contract/leases | Estimated arrearages on contract as of date of filing | Monthly payment to be made on contract arrearage | Regular number of contract payments remaining as of date of filing | Amount of regular contract payment |
|---|---|---|---|---|---|
| -NONE- |  |  |  |  |  |

Any Lease Payment will not be paid additional interest.

**D. Claims to Which Section 506 Valuation is NOT Applicable:** Claims listed in this subsection consist of debts secured by a purchase money security interest in a vehicle for which the debt was incurred within 910 days of filing the bankruptcy petition, or, if the collateral for the debt is any other thing of value, the debt was incurred within 1 year of filing;

☐ (1)  The lien holder is to be paid in full with interest and in equal monthly payments as specified below;

| Creditor | Collateral | Purchase Date | Claim Amount | Interest Rate | Monthly Payment Including Interest |
|---|---|---|---|---|---|
| -NONE- |  |  |  | Item 8 Unless Otherwise Specified |  |

**OR**

☒ (2)   The collateral as described below is to be surrendered to the lien holder with the following treatment:

| Creditor | Property Description | Special Treatment |
|---|---|---|
|  |  |  |
|  |  |  |

**OR**

**E.  Claims to Which Section 506 Valuation is Applicable:** Claims listed in this subsection consist of any claims secured by personal property not described in the above plan paragraph:

| Creditor | Collateral | Purchase Date | Replacement Value | Interest Rate | Monthly Payment Amount |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

| Creditor | Collateral | Purchase Date | Replacement Value | Interest Rate | Monthly Payment Amount |
|----------|-----------|---------------|-------------------|---------------|------------------------|
|          |           |               |                   |               |                        |
|          |           |               |                   |               |                        |
|          |           |               |                   |               |                        |

**OR**

☐ (1) The collateral as described below is to be surrendered to the lien holder with the following treatment:

| Creditor | Property Description | Special Treatment |
|----------|---------------------|-------------------|
| **-NONE-** |                   |                   |

**Note: The personal property shall be valued for purposes of §506(a) of the Code at the lower of the creditor's representation on its Proof of Claim or the Debtor's representation in above paragraph of the Chapter 13 Plan.**

**NOTE:** If sufficient funds are not available to make a full monthly payment on all the Class 1 claims, the available funds should be distributed to the Class 1 creditors on a pro rata basis based on the unpaid specific monthly payments due through that month's distribution.

**F. Administrative Claims such as Attorney's Fees to be paid their monthly payment prior to all other per monthly payments listed in Class 1 (B), (C), (D) and (E) claims. If Class 1 monthly payments and attorney fees' payments (plus the Trustee's fees) exceed the Chapter 13 Plan payment, then attorney fees will be reduced.**

**Otherwise, to be paid in monthly amount as set forth below:**

Attorney Fees Requested to be paid by Trustee pursuant to the Application for Allowance of Fees, Form 2016-1, and Allowed by the Court are to be paid pursuant to Local Bankruptcy Rule L.B.R. 2016-1 or as funds are available.  The fees listed below MUST match the Application for Allowance of Fees in order to be paid.

| Amount Fee Requested | Fee Due in Plan | Monthly Amount (over at least 12 months) |
|----------------------|-----------------|------------------------------------------|
| **3,500.00**         | **1,500.00**    | **1,500.00**                             |

**Class 2:** Secured claims listed on Schedule D for which the plan does not provide specific monthly payments; and, any scheduled claim designated for inclusion in this class. This class will include mortgage arrearages, additional post-petition attorney fees, Certificates of Judgment and secured real estate taxes.  The listing of mortgage arrearage is an estimate only and will be paid pursuant to the filed Proof of Claim subject to the claims objection process. **Paid only after Class 1 claims are paid current. If no value is given in this Plan for a Class 2 claim, the value for a Class 2 secured claim is the lower of the claimant's representation on its proof of claim or the debtor's representation as set forth on "Schedule D - Creditors Holding Secured Claims". L.B.R. 3012-1(a).**

**Class 3:** Priority Claims listed on Schedule E for inclusion in this class.  Paid only after Class 2 claims are paid in full.

Section 1322(a) of the Bankruptcy Code provides that all claims entitled and filed as priority under Section 507(a) shall be paid in full in deferred cash payments unless the holder of a particular claim agrees to a different treatment of such claim except for a priority claim under Section 507(a)(1)(B).  It is further provided that any and all pre-petition penalties, and post-petition penalties and interest, which have attached or will be attached to such claim, shall be treated as a general unsecured claim and not entitled to priority.

**Class 4:** Reserved

**Class 5:** All other pre-petition claims, including unsecured claims not otherwise part of another class, the under secured portion of secured claims and the non-priority tax claims as set forth in Item 18.
Distributions on the claims in this Class 5 shall be –

(A) Paid after Classes 2 and 3 are paid in full and after Class 1 claims are paid current.

**Class 6:** Post-petition claims will be paid at the Trustee's discretion depending on availability of funds and length of plan.

**Class 7:** Scheduled claims which are to be paid by a non-debtor and are not to be paid by the Trustee or the Debtor.

**Class 8:** Scheduled claims which are not to be paid by the Trustee or the Debtor.

**Class 9:** Scheduled claims on which the payments are to be disbursed by the Debtor.

6.     **Secured Claims (Valuation of Collateral, Interest Rates, Lien Retention and Release, and Surrender of Property) -**

(A) With respect to each allowed secured claim, unless the holder of the claim has accepted a different treatment of  the claim, or the Debtor proposes to surrender the property securing the claim to such holder, **the holder of each allowed secured claim shall retain the lien securing such claim until the secured and unsecured claim is paid**, and shall be paid an amount that is not less than the allowed amount of such claim, plus interest at the rate hereinafter set forth on the unpaid balance of the allowed secured claim.
(B) The allowed amount of a secured claim shall be the lesser of the value of the property securing the claim or the amount of the allowed claim as of the date of the filing of the petition. The value of personal property securing the claim shall be the value as scheduled by the debtor, unless otherwise ordered.

7.     **Unsecured Claims -**Unsecured claims shall be paid in a manner that provides the same treatment for each claim within a particular class.

8.     **Interest** –
(A) The interest rate to be paid on allowed Class 1 and Class 2 secured claims, including prepetition real estate mortgage arrearages, if appropriate, shall be based on the national prime rate plus the appropriate risk factor of **1.5%** from the date nearest to the approximate date of confirmation of the plan unless otherwise specified in the Plan. The rate will be determined as shown in the *Wall Street Journal* for Money Rates. The actual amount of interest paid will be calculated by the Trustee in the Trustee's reasonable and customary administration procedures.

(B)  Except as provided by subparagraph (D), interest shall not commence on any claim until the later of the allowance of the claim or the effective date of the plan.

(C)  No interest shall be paid on any unsecured claim unless specifically provided for by the plan, **except** as provided by operation of law.

(D)  No interest shall be paid on any pre-petition mortgage arrearage as part of the cure of the default if the mortgage was entered into after October 22, 1994.

9.     **Vesting of Property in Debtor -**All property of the estate shall not vest back to the Debtor after confirmation, but shall remain property of the estate until the case is dismissed, discharged or converted.

10.    **Sale of Real Estate** – Upon the filing of the appropriate motion and pursuant to Local Bankruptcy Rules, any scheduled real estate may be sold during the life of the plan if there would be sufficient proceeds to pay in full all mortgages and liens encumbering the property. Any sale shall be subject to approval of the Court, and will be free and clear of liens with the liens of any mortgagees and lien creditors attaching to the proceeds of sale. Mortgages and liens shall be canceled of record upon payment of the mortgages and liens. If the real estate sold is the Debtor's residence a portion of the sale proceeds may be paid to the Debtor for relocation expenses.

11.    **Real Estate Taxes** - Allowed real estate tax claims to be disbursed by the Trustee will be only those real estate taxes due and payable, without penalty, as of the date of the filing of the petition. Real estate taxes payable after the date of the filing of the petition will be disbursed by the Debtor.

12.    **Designation and Payment of Special Classified Class of Unsecured Claim** –

(A) **Below Median Income Case** - If any unsecured consumer debt (i.e., cosigned debt, student loan) is proposed to be paid in whole including contract rate of interest, or in part after the completion of payment of all other unsecured claims, such payment shall not commence until  after the payment of the confirmed percent of the general unsecured claims or the completion of 36 months of plan payments, whichever is greater.  This debt is to be set forth in Item 19.

13.    **Trustee Discretion on Distributions** - The Trustee is authorized within his discretion to calculate the amount and timing of distributions as is administratively efficient.

14.    **Personal injury claims, workers compensation claims, social security claims and miscellaneous claims of the Debtor** - The Debtor shall keep the Trustee informed as to any change in status of any claim for personal injury, workers compensation, social security, buyouts, severance packages, inheritance or any other claim to which Debtor may be entitled. Before the claim can be settled and distributed, the Debtor must comply with all requirements for filing applications and motions for settlement with the Court as required by the Bankruptcy Code and Local Rules. These funds shall be treated as additional plan payments to increase the dividend for unsecured creditors or as the Court so otherwise orders. The Debtor's case will not complete until the claim has been settled and shall remain open for administration purposes until the claim has been paid into the plan or the Court so otherwise orders.

15.   **Casualty Loss Insurance Proceeds (Substitution of Collateral)** - If a motor vehicle is substantially damaged while there is still an unpaid secured claim which is secured by the vehicle, the Debtor shall have the option, upon the filing of the appropriate motion, of using the proceeds of any insurance payable due to loss of the vehicle to either repair the vehicle, pay off the balance of the secured claim if the secured creditor is a named loss payee on the policy, with any balance of the proceeds after secured and unsecured claims have been paid, refunded to debtor up to the exempt amount claimed by the debtor or to substitute collateral by purchasing a replacement vehicle. If any amount of proceeds exists after paying the secured and unsecured claims and exemption, said proceeds shall be paid into the plan as additional plan payments unless otherwise specified in the Motion and Order to Retain Insurance Proceeds. If a replacement vehicle is purchased the vehicle will have a value not less than the balance of the unpaid secured claim and the lien of the creditor will be transferred to the replacement vehicle and the Trustee will continue to pay the allowed secured claim.

16.   **Utility Deposits** - The plan provides adequate assurance of payment pursuant to 11 U.S.C. §366. Any utility requiring a security deposit shall forward written notice of the security deposit to the Debtor's counsel. The security deposit demand shall comply with PUCO requirements. The security deposit demand shall be paid as an administrative expense by the Chapter 13 Trustee, through the plan after confirmation and upon the filing of a proof of claim for a security deposit demand by the utility. No utility shall discontinue service to Debtors after filing of the petition for failure of the Debtors to pay a security deposit.

17.   **Tax Returns and Refunds** - If Debtors are required to submit their Internal Revenue Service tax returns and refunds, Debtors shall submit the returns to the Trustee by April 30th of each required year and the refunds must be turned over to the Trustee by June 1st of each required year. Said refunds shall first be used to satisfy the secured and priority claims of the I.R.S. and then as additional plan payments to increase the dividend for unsecured creditors. Any Motions to Use Tax Proceeds shall be filed by June 1st or failure to follow these provisions may result in conversion or dismissal of your case.  Said motion shall be considered a modification to the confirmed plan and served accordingly.

18.   **PLAN FOR REAL ESTATE  (Use separate schedule for each parcel of real estate)**

      **NOTE: If the intent of the Debtor is to file an adversary proceeding to cram down a wholly unsecured junior mortgage, said adversary proceeding SHOULD be filed within thirty (30) days of confirmation and an objection to the Proof of Claim must also be filed to prevent the Trustee from paying on the claim.**

      **(A) Mortgage Proof of Claim.**  If regular monthly payments to a mortgage creditor are to be disbursed by the trustee, or there is an arrearage as of the petition filing date, the mortgage proof of claim shall include Official Form B10 Mortgage Proof of Claim Attachment or, in the alternative, provide the needed information for the Trustee and Debtor to review the Proof of Claim as to any escrow, principal balance, current payment, arrearage, fees and other charges.

      **(B) Change in Regular Monthly Payments to Mortgage Creditor.**  If there is any change in the regular monthly payment, the mortgage creditor shall file with the court Official Form B10 (Supplement 1) Notice of Mortgage Payment Change as a supplement to the proof of claim and serve the debtor, debtor's attorney and Chapter 13 Trustee no later than twenty-one (21) days prior to the effective date of the change.  The form is required whether the security interest is in the debtor's principal residence or other piece of real property.  This form may be found as part of the local Bankruptcy Rules for the Southern District of Ohio or the Dayton Chapter 13 website:www.dayton13.com.

      (C) Any assessments, fees, costs, expenses or other monetary amounts, exclusive of principal, interest, taxes and insurance that arose from the date of the filing of the bankruptcy petition to the entry of the Order of Discharge assessed by any creditor against either the debtor or the real property of the debtor may be assessed, charged or collected only as allowed by an Order of the Court or an allowed Proof of Claim.  The Mortgage Servicer, or Mortgage Claimant, shall perform an annual escrow analysis and shall file yearly a Notice of Payment Change with a copy of the escrow analysis showing the taxes and insurance paid for the prior year consistent with 12 U.S.C. §2609(c)(2)(A) and (B). Absent objection, and thirty days after the Notice of Intent to Pay Claim has been filed, the Trustee will modify the monthly plan payment in accordance with the Notice provided or Amended Proof of Claim.

      (D) No late charges, fees or other monetary amounts shall be assessed on the timing of any payments made by the Trustee under the provisions of the Plan, unless allowed by Order of the Court.

      **(E) Valuation of real estate is set at confirmation unless the appraisal is not filed per L.B.R.3015-3(e)(3).** The confirmation hearing will include a §506(a) or B.R. 3012 valuation hearing if a creditor disputes the value and objects pursuant to the requirements of the Local Bankruptcy Rules. If no objection is timely filed, the value as set forth in the Chapter 13 Plan and/or filed Appraisal will be binding upon confirmation of the Chapter 13 Plan.

      (F)   Mortgage Loan Modifications
      If a Mortgage Loan Modification has been approved **prior to the filing of the Chapter 13 Petition** by the Mortgage Creditors, the approval documents must be provided to the Trustee at least seven (7) days prior to the Meeting of Creditors.  The Loan Modification will control as to the revised numbers.  If the Loan Modification is pending, then Local Bankruptcy Rules will control the mortgage will be paid pursuant to these requirements.  If there is an arrearage at the time of the filing of the Chapter 13 Petition, then the mortgage will remain being paid through the Trustee's Office even if the subsequent Loan Modification states the arrears will be paid at the end of the mortgage.  Forms for the Motion for Loan Modification are found on the Trustee's website at:www.dayton13.com.

## PARCEL NO. 1

### 1500 Harvard Bvld, Dayton, Ohio

**Description and Location of Property:** **cumberland is attached to Harvard the property sits on both properties although they are different parcels**

Appraisal must be provided by Debtor and the appraisal must be filed with the Court before the Meeting of Creditors.

Personal Residence ☐ Yes ☒ No                    Original Purchase Price

---

Lien Holder # **1** (Must match Schedule D) **Montgomery County Treasurer**

Monthly Payment                                                                    $

Months in Default

Total Arrearage (including month petition filed)*                                  $

☐ PLAN: Mortgage payments to be disbursed by the Trustee unless this box is checked for disbursement by the Debtor

☐ Debtor will be filing an Adversary Proceeding to Avoid this mortgage.

If arrearage on the mortgage at the time of filing, payment must be disbursed by the Trustee pursuant to L.B.R. 3015-1(d)(1).

☐ Interest will NOT be paid on the mortgage arrearage claim unless this box is checked:

If Trustee disburses, then arrearage shall be paid as a class 2 creditor.
**\*Estimate only - the filed Proof of Claim, subject to objections, shall determine the actual arrearage.**
Any Special Treatment must be addressed in Paragraph 19, "Special Plan Provisions".

---

Lien Holder # **2** (Must match Schedule D) **Weller Mortgages**

Monthly Payment                                                                    $

Months in Default

Total Arrearage (including month petition filed)*                                  $

☐ PLAN: Mortgage payments to be disbursed by the Trustee unless this box is checked for disbursement by the Debtor

☐ Debtor will be filing an Adversary Proceeding to Avoid this mortgage.

If arrearage on the mortgage at the time of filing, payment must be disbursed by the Trustee pursuant to L.B.R. 3015-1(d)(1).

☐ Interest will NOT be paid on the mortgage arrearage claim unless this box is checked:

If arrearage on the mortgage at the time of filing, payment must be disbursed by the Trustee pursuant to L.B.R. 3015-1(d)(1).
Any Special Treatment must be addressed in Paragraph 19, "Special Plan Provisions".

---

## PARCEL NO. 2

**Description and Location of Property:**
**1661 Earlham Dr**
**Dayton Oh 45406**
**this is debtors residence**

Appraisal must be provided by Debtor and the appraisal must be filed with the Court before the Meeting of Creditors.

Personal Residence ☐ Yes ☒ No                    Original Purchase Price

---

Lien Holder # **1** (Must match Schedule D) **Montgomery County Treasurer**

Monthly Payment                                                                    $
Months in Default
Total Arrearage (including month petition filed)*                                 $

☐ PLAN: Mortgage payments to be disbursed by the Trustee unless this box is checked for disbursement by the Debtor

☐ Debtor will be filing an Adversary Proceeding to Avoid this mortgage.

If arrearage on the mortgage at the time of filing, payment must be disbursed by the Trustee pursuant to L.B.R. 3015-1(d)(1).

☐ Interest will NOT be paid on the mortgage arrearage claim unless this box is checked:

If Trustee disburses, then arrearage shall be paid as a class 2 creditor.
**\*Estimate only - the filed Proof of Claim, subject to objections, shall determine the actual arrearage.**
Any Special Treatment must be addressed in Paragraph 19, "Special Plan Provisions".

---

Lien Holder # **2** (Must match Schedule D) **Chase Home Finance**

Monthly Payment                                                              $**717.00**
Months in Default
Total Arrearage (including month petition filed)*                                 $

☐ PLAN: Mortgage payments to be disbursed by the Trustee unless this box is checked for disbursement by the Debtor

☐ Debtor will be filing an Adversary Proceeding to Avoid this mortgage.

If arrearage on the mortgage at the time of filing, payment must be disbursed by the Trustee pursuant to L.B.R. 3015-1(d)(1).

☐ Interest will NOT be paid on the mortgage arrearage claim unless this box is checked:

If arrearage on the mortgage at the time of filing, payment must be disbursed by the Trustee pursuant to L.B.R. 3015-1(d)(1).
Any Special Treatment must be addressed in Paragraph 19, "Special Plan Provisions".

---

Lien Holder # **3** (Must match Schedule D) **Internal Revenue Service**

Monthly Payment                                                              $**0.00**
Months in Default
Total Arrearage (including month petition filed)*                                 $

☐ PLAN: Mortgage payments to be disbursed by the Trustee unless this box is checked for disbursement by the Debtor

☐ Debtor will be filing an Adversary Proceeding to Avoid this mortgage.

If arrearage on the mortgage at the time of filing, payment must be disbursed by the Trustee pursuant to L.B.R. 3015-1(d)(1).

☐ Interest will NOT be paid on the mortgage arrearage claim unless this box is checked:

If arrearage on the mortgage at the time of filing, payment must be disbursed by the Trustee pursuant to L.B.R. 3015-1(d)(1).
Any Special Treatment must be addressed in Paragraph 19, "Special Plan Provisions".

**PARCEL NO. 3**

**2734 Oxford Ave**
**Dayton Oh 45406**

**Description and Location of Property:**
Appraisal must be provided by Debtor and the appraisal must be filed with the Court before the Meeting of Creditors.
Personal Residence ☐ Yes ☒ No                                    Original Purchase Price

---

Lien Holder # **1** (Must match Schedule D) **Montgomery County Treasurer**
Monthly Payment                                                          $
Months in Default
Total Arrearage (including month petition filed)*                         $

☐ <u>PLAN:</u> Mortgage payments to be disbursed by the Trustee unless this box is checked for disbursement by the Debtor

☐ Debtor will be filing an Adversary Proceeding to Avoid this mortgage.

If arrearage on the mortgage at the time of filing, payment must be disbursed by the Trustee pursuant to L.B.R. 3015-1(d)(1).

☐ Interest will <u>NOT</u> be paid on the mortgage arrearage claim unless this box is checked:

If Trustee disburses, then arrearage shall be paid as a class 2 creditor.
**\*Estimate only - the filed Proof of Claim, subject to objections, shall determine the actual arrearage.**
Any Special Treatment must be addressed in Paragraph 19, "Special Plan Provisions".

---

Lien Holder # **2** (Must match Schedule D) **Weller Mortgages**
Monthly Payment                                                          $
Months in Default
Total Arrearage (including month petition filed)*                         $

☐ <u>PLAN:</u> Mortgage payments to be disbursed by the Trustee unless this box is checked for disbursement by the Debtor

☐ Debtor will be filing an Adversary Proceeding to Avoid this mortgage.

If arrearage on the mortgage at the time of filing, payment must be disbursed by the Trustee pursuant to L.B.R. 3015-1(d)(1).

☐ Interest will <u>NOT</u> be paid on the mortgage arrearage claim unless this box is checked:

If arrearage on the mortgage at the time of filing, payment must be disbursed by the Trustee pursuant to L.B.R. 3015-1(d)(1).
Any Special Treatment must be addressed in Paragraph 19, "Special Plan Provisions".

---

**PARCEL NO. 4**

**4501 N. Main St**
**Dayton Oh 45405**

**Description and Location of Property:**
Appraisal must be provided by Debtor and the appraisal must be filed with the Court before the Meeting of Creditors.
Personal Residence ☐ Yes ☒ No                                    Original Purchase Price

Lien Holder # **1** (Must match Schedule D) **Montgomery County Treasurer**
Monthly Payment                                                                          $
Months in Default
Total Arrearage (including month petition filed)*                                     $

☐ PLAN: Mortgage payments to be disbursed by the Trustee unless this box is checked for disbursement by the Debtor

☐ Debtor will be filing an Adversary Proceeding to Avoid this mortgage.

If arrearage on the mortgage at the time of filing, payment must be disbursed by the Trustee pursuant to L.B.R. 3015-1(d)(1).

☐ Interest will <u>NOT</u> be paid on the mortgage arrearage claim unless this box is checked:

If Trustee disburses, then arrearage shall be paid as a class 2 creditor.
**\*Estimate only - the filed Proof of Claim, subject to objections, shall determine the actual arrearage.**
Any Special Treatment must be addressed in Paragraph 19, "Special Plan Provisions".

Lien Holder # **2** (Must match Schedule D) **Edna Hussmann**
Monthly Payment                                                                          $**371.00**
Months in Default
Total Arrearage (including month petition filed)*                                     $

☒ PLAN: Mortgage payments to be disbursed by the Trustee unless this box is checked for disbursement by the Debtor

☐ Debtor will be filing an Adversary Proceeding to Avoid this mortgage.

If arrearage on the mortgage at the time of filing, payment must be disbursed by the Trustee pursuant to L.B.R. 3015-1(d)(1).

☐ Interest will <u>NOT</u> be paid on the mortgage arrearage claim unless this box is checked:

If arrearage on the mortgage at the time of filing, payment must be disbursed by the Trustee pursuant to L.B.R. 3015-1(d)(1).
Any Special Treatment must be addressed in Paragraph 19, "Special Plan Provisions".

## PARCEL NO. 5

**Description and Location of Property:    518 Delaware Avenue, Dayton, Ohio 45406**
Appraisal must be provided by Debtor and the appraisal must be filed with the Court before the Meeting of Creditors.
Personal Residence ☐ Yes ☒ No                                    Original Purchase Price

---

Lien Holder # **1** (Must match Schedule D) **Montgomery County Treasurer**
Monthly Payment                                                   $0.00
Months in Default
Total Arrearage (including month petition filed)*                 $

☐ PLAN: Mortgage payments to be disbursed by the Trustee unless this box is checked for disbursement by the Debtor

☐ Debtor will be filing an Adversary Proceeding to Avoid this mortgage.

If arrearage on the mortgage at the time of filing, payment must be disbursed by the Trustee pursuant to L.B.R. 3015-1(d)(1).

☐ Interest will <u>NOT</u> be paid on the mortgage arrearage claim unless this box is checked:

If Trustee disburses, then arrearage shall be paid as a class 2 creditor.
**\*Estimate only - the filed Proof of Claim, subject to objections, shall determine the actual arrearage.**
Any Special Treatment must be addressed in Paragraph 19, "Special Plan Provisions".

---

Lien Holder # **2** (Must match Schedule D) **Weller Mortgages**
Monthly Payment                                                   **$0.00**
Months in Default
Total Arrearage (including month petition filed)*                 $

☐ <u>PLAN:</u> Mortgage payments to be disbursed by the Trustee unless this box is checked for disbursement by the Debtor

☐ Debtor will be filing an Adversary Proceeding to Avoid this mortgage.

If arrearage on the mortgage at the time of filing, payment must be disbursed by the Trustee pursuant to L.B.R. 3015-1(d)(1).

☐ Interest will <u>NOT</u> be paid on the mortgage arrearage claim unless this box is checked:

If arrearage on the mortgage at the time of filing, payment must be disbursed by the Trustee pursuant to L.B.R. 3015-1(d)(1).
Any Special Treatment must be addressed in Paragraph 19, "Special Plan Provisions".

---

**19.  The Special Plan Provisions** listed below, if any, are restricted to those items applicable to **Debtor's particular circumstances**. NOTE: Special Plan Provisions shall **NOT** contain a restatement of provisions of the Bankruptcy code or local or national rules of bankruptcy procedures, nor shall this section contain boilerplate language regarding the treatment of mortgages, mortgage arrearages, proofs of claim, consumer protection provisions or similar matters.

**Special Plan Provisions:**

**(A) ☒ Other:**

**1. The plan percentage calculated above reflects the preference payment made to daughter in order to satisfy best interest.**

**2.  The IRS has a tax lien that attaches to all property of the debtor.  It is to be paid in full as a class 2 creditor at TIL interest.**

**2.  Harvard and Cumberland are 2 separate parcels for tax purposes but there is one building on the lots.  The American Tax Funding is to be paid as  Class 2 creditor at  18% Interest.  The property  at Harvard and Cumberland is valued at $56000.  NIcholas Weller holds a mortgage on the property.  This is a rental property so the debtor is going to pay Nicholas Weller as a Class 2 creditor at TIL to the value of his mortgage minus the amount owed on property taxes.  The unsecured balance of the debt to Nicholas Weller is to be paid as a class 5 creditor and shall be discharged upon completion of the case.  Upon completion of this case, Nicholas Weller shall release his lien on the properties located at Harvard and Cumberland.**

**3.  1661 Earlham Drive is the debtor residence.  Montgomery County Treasury is to be paid as a class 2 creditor at TIL interest.**

**4.  2734 Oxford Ave is a rental property.  The property appraised at $32000.  Montgomery County Tresurer is to be paid as a class 2 creditor at TIL interest.  NIcholas Weller dba Weller Mortgage holds a mortgage on the property he is to be paid as a Class 2 Creditor at TIL interest to the value of his mortgage minus the amount owed on property taxes.  The unsecured balance of the debt to Nicholas Weller is to be paid as a class 5 creditor and shall be discharged upon completion of the case.  Upon completion of this case, Nicholas Weller shall release his lien on the properties located at 2734 Oxford Ave**

**5.  4501 N. Main St is the Debtors offices and a rental property.  The Montgomery County treasurer is to be paid as a class 2 creditor at TIl interest.**

**(B)** ☒ **Surrender of Real Estate** - Debtor(s) hereby surrender the real estate property located at **518 Delaware Avenue, Dayton, Ohio 45406**. Trustee will **not** pay on any mortgages, mortgage arrearages or certificate of judgments related to this real estate, nor pay any county real estate taxes on this property as the taxes will be paid at the foreclosure sale unless otherwise provided for in this Plan.  Trustee will NOT pay on the claims of **Montgomery County Treasurer** for any filed mortgage claims or liens until Creditor files a deficiency claim.  The deficiency claim shall be filed no later than 270 days from the date that the within Plan is confirmed.  If the deficiency claim is filed more than 270 days after the Plan is confirmed, then it shall be disallowed except upon further Order of the Court by the Creditor filing timely a Motion to Extend Time OR Motion to File the Deficiency Claim Out of Time.  The personal liability of the Debtor(s) shall be discharged upon completion of the Plan and the entry of Discharge.

**(B)** ☒ **Surrender of Real Estate** - Debtor(s) hereby surrender the real estate property located at **518 Delaware Avenue, Dayton, Ohio 45406**. Trustee will **not** pay on any mortgages, mortgage arrearages or certificate of judgments related to this real estate, nor pay any county real estate taxes on this property as the taxes will be paid at the foreclosure sale unless otherwise provided for in this Plan.  Trustee will NOT pay on the claims of **Weller Mortgages** for any filed mortgage claims or liens until Creditor files a deficiency claim.  The deficiency claim shall be filed no later than 270 days from the date that the the within Plan is confirmed.  If the deficiency claim is filed more than 270 days after the Plan is confirmed, then it shall be disallowed except upon further Order of the Court by the Creditor filing timely a Motion to Extend Time OR Motion to File the Deficiency Claim Out of Time.  The personal liability of the Debtor(s) shall be discharged upon completion of the Plan and the entry of Discharge.

**(C)** ☐ **Avoiding Lien, Mortgage or Judgments**- Debtor(s) are filing an Adversary Proceeding/ Motion to avoid the mortgage/ judgement lien of Creditor _____ on the property located at _____ . Said action should be filed within thirty (30) days of confirmation.  Creditor shall release the mortgage/ lien upon completion of the Plan as evidenced by the Chapter 13 Trustee's Certification of Final Payment and Case History.  In the event of failure of the Creditor _____ to execute and deliver the release of the mortgage or lien within thirty (30) days after the plan completion as evidenced by the Chapter 13 Trustee's Certification of Final Payment and Case History in the instant case, Debtor(s) may present a certified copy of this Court's Order regarding the mortgage or lien to the Office of the County Recorder of the proper county and said document will act as a release with regards to the mortgage or lien.

**(D)** ☐ **Relief From Stay** - If at any time during the Plan a mortgage holder obtains relief from stay on the real estate located at _____, the Trustee shall discontinue all payments to the creditor and all other lien holders _____ on their claims under the Plan.  The mortgage creditor is directed to file a report of sale promptly following liquidation of the subject property if any excess proceeds are received.  Should the mortgage holder or any other lien holder seek to file any unsecured deficiency claim, it shall do so no later than 90 days after the order on relief is entered unless as allowed by further Order of the Court. If no deficiency claim is timely filed as specified above, or the mortgage holder fails to complete the sale, the personal liability of the Debtor(s) shall be discharged upon the Court entering the Order of Discharge in this case.

**20.**    **Method of Plan Payment** - The Debtors acknowledge they have been informed that the Local Bankruptcy Rules require payments to be **MADE BY WAGE DEDUCTION** unless otherwise authorized by the Trustee or ordered by the Court.  The Debtors acknowledge they are required to pay the first plan payment **to the Trustee's lockbox by the time of the Meeting of Creditors by Certified Check, Cashier's Check or Money Order** and to continue to pay the proposed plan payments until otherwise ordered by the Court or notified in writing by the Trustee. If the Debtor is employed and has sufficient wages, the wage deduction will commence upon Court order. **It is understood by the Debtor that for any pay period when the plan payments are not deducted from the Debtors' wages that the Debtors shall pay the payment to the Trustee at his lockbox by Certified Check, Cashier's Check, or Money Order.**

$__  or  __% of the plan payment is to be deducted from the male Debtor's wages.

Debtor is paid ☐ Weekly ☐ Bi-weekly ☐ Semi-monthly ☐ Monthly

$__  or  __% of the plan payment is to be deducted from the female Debtor's wages.

Debtor is paid ☐ Weekly ☐ Bi-weekly ☐ Semi-monthly ☐ Monthly

---

**Signature(s) of Debtor(s) (Individual/Joint)**
I declare under penalty of perjury that the information provided in this plan is true and correct.
X  **/s/ Shirley L Magee**                                              X  _____
    **Shirley L Magee**
Signature of Debtor                                                    Signature of Debtor
Date    **November 18, 2012**

---

**APPRAISALS FIRST**

File No. 1661Earlham

APPRAISAL OF



**Single Family Property**

LOCATED AT:

1661 Earlham Drive
Dayton, OH 45406

FOR:

WAYNE P. NOVICK
2135 Miamisburg-Centerville Road
Centerville, OH  45459

BORROWER:

Shirley Magee

AS OF:

November 8, 2012

BY:

Mel Rutherford

**Desktop Valuation**
**(Limited Appraisal/Summary Report)**

File No. ___1661Earlham___
Loan No. _____

## CLIENT AND PROPERTY IDENTIFICATION

| | |
|---|---|
| Client/Lender:WAYNE P. NOVICK | Address: 2135 Miamisburg-Centerville Road, Centerville, OH 45459 |

| | | | |
|---|---|---|---|
| Property Address:1661 Earlham Drive | | | |
| City: Dayton | County: Montgomery | State: OH | Zip Code:45406 |
| Borrower/Applicant:Shirley Magee | | Census Tract: 0000.00 | |
| Legal Description: 47115 | | | |
| Property Type: [X] SFR   [ ] PUD   [ ] Condominium | | Map Reference:Dayton City | |

The undersigned appraiser has performed a desktop valuation of the subject property. The purpose of this desktop valuation is to determine the market value of the subject property. The primary method of valuing the subject property is the sales comparison approach. This report is intended for use for loan purposes only and is limited to use by the above named client/lender; this report is not to be used for any other purpose, or by any other party. This report may be completed under the following circumstances: 1) when there is adequate comparable market data in the neighborhood to develop a reliable sales comparison analysis for the subject property; 2) when the property rights appraised are fee simple; and 3) zoning, if classified, is residential. The appraiser has made the extraordinary assumption that the subject property is an existing, legal single family dwelling in compliance with current zoning. The reliability of this valuation is considered to be impacted to a certain extent by the appraiser's lack of inspection of the subject property and the comparable sales.

## SALES COMPARISON ANALYSIS

| | Subject Property | Comparable 1 | Comparable 2 | Comparable 3 |
|---|---|---|---|---|
| Address | 1661 Earlham Drive | 1526 Burbank Dr. | 4151 Ardery Ave. | 2100 Harvard Blvd. |
| Proximity to Subject | N/A | .20 Mile North | 2.5 Miles Northwest | .43 Mile Northeast |
| Data Source | MLS,Pub.Rec. | MLS, Pub.Rec. | MLS, Pub.Rec. | MLS, Pub.Rec. |
| Sales Price | N/A | 53,500 | 52,900 | 42,500 |
| Date of Sale | N/A | 09/19/12 | 05/03/12 | 01/06/12 |
| Location | Dayton | Dayton | Dayton | Dayton |
| Site/View | Residential | Residential | Residential | Residential |
| Condition | Average | Average | Average | Average |
| Gross Living Area | 1700 | 1438 | 1825 | 1912 |
| Bedrooms/Baths | 3          1.5 | 2          2 | 3          2.5 | 4          1.5 |
| Age | 70 Years | 68 Years | 51 Years | 85 Years |
| Garage/Carport | 1 Car Garage | 1 Car Garage | 2 Car Garage | 2 Car Garage |
| Basement | Full | Full | Full | Full |
| Porches, Patio, Pool | Stoop | Cov'd Porch | Stoop | Cov'd Porch |
| Amenities/Upgrades | Typical of Area | Typical of Area | Typical of Area | Typical of Area |
| Other | Rear Porch | None | Enc'd Patio | Deck |
| Overall Comparison | | Similar | Similar | Similar |

**Relative Comparison Analysis**

Comments:   All comparable sales were taken from the subject market area and were selected for their location, design and similar amenitites. All comparable sales were correlated for an indication  of market value.

The appraiser has researched the sales and listing history of the subject property for the past three years:

[X] The property has not transferred ownership or been listed for sale during this period.

[ ] The subject was [ ] sold [ ] listed for $ _____ on the date _____

Comments:

My opinion of the market value of the subject property is $ 48,000          , as of  November 8, 2012          ,
which is the effective date of this desktop analysis.

File No. 1661Earlham

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and acting in what they consider their own best interests; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in this limited residential appraisal and summary report is subject to the following conditions:

1. This limited residential appraisal and summary report invokes the Departure Provision of the Uniform Standards of Professional Appraisal Practices Standards Rule 1-4. In this report, any reference to the term "report" means: limited residential appraisal and summary report. Because the income approach to value is generally not considered applicable to the market valuation of residential properties, the exclusion of the income approach is not considered a Departure. The cost approach to value is considered of secondary importance in the valuation of residential property, therefore, its exclusion is considered a Departure. Because the sales comparison approach to value is the most reliable indicator of market value, the appraiser has determined that the exclusion of the cost approach to value will not result in a report that is misleading to the client.

2. The HIGHEST AND BEST USE as improved is the present use, based on the residential zoning and the appraiser's familiarity with the residential nature of the subject's neighborhood. This is the reasonably probable and legal use that is physically possible, appropriately supported, financially feasible, and results in the highest value.

3. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser has made the extraordinary assumption that the title is good marketable and, therefore, will not render any opinions about the title. The property is appraised on the additional extraordinary assumption of its being under responsible ownership.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable. The appraiser has made the extraordinary assumption that there are no such conditions and makes no guarantees or warranties, expressed or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this report must not be considered as an environmental assessment of the property. If the subject property was built prior to 1978, the dwelling may contain lead-based paint.

6. Information regarding the subject's physical characteristics was obtained either from information supplied on the appraisal request or from third party sources that the appraiser considers to be reliable and believes the data to be true and correct. The appraiser does not assume responsibility for the accuracy of such data that were furnished by other parties.

7. The appraiser will not disclose the contents of this report except as provided for in the Uniform Standards of Professional Appraisal Practice.

8. The appraiser must provide his or her prior written consent before the lender/client specified in this report can distribute this report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgage or its successors and assigns; the mortgage insurer; consultants; professional appraisal organization; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of this report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the report can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

**SCOPE OF WORK PERFORMED:**

I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis. Differences in the subject and comparables were analyzed to arrive at a value conclusion in this report. Utilizing the Sales Comparison Approach, I placed most emphasis on the comparable(s) considered to be most similar to the subject.

I have taken into consideration the factors that I am aware of that have an impact on value in my development of the value conclusion presented in this report. I have not knowingly withheld any significant information from this report.

Based on prior agreement with the client, an inspection of the property, the Cost Approach and Income Approach were excluded from this report. I have considered these exclusions and determined that the exclusion of an inspection, the Cost Approach and the Income Approach would not result in a report that is misleading to the client.

Although I have not personally inspected the subject property and the properties utilized as comparables in this report, I certify that I have no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions within the immediate vicinity of the subject property.

**APPRAISER'S CERTIFICATION:** I certify that, to the best of my knowledge:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analysis, opinions, and conclusions.

3. I have no present or prospective interest in the property that is the subject of this report, and no personal interest or bias with respect to the parties involved.

4. I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

5. My engagement in this assignment was not contingent upon developing or reporting predetermined results.

6. My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

7. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the *Uniform Standards of Professional Appraisal Practice.*

8. I have not made a personal inspection of the property that is the subject of this report.

9. No one provided significant real property assistance to the person signing this certification.

**APPRAISER:**

Signature: *Mel Rutherford*

Name: Mel Rutherford

Date Signed: 11/08/2012

State Certification #: 396696

or State License #: _____  State: OH

Expiration Date of Certification or License: 08-09-13

**Address of Appraised Property:** 1661 Earlham Drive, Dayton, OH 45406

**Appraised Value of Property:** $ 48,000  **Effective Date of Appraisal:** November 8, 2012

Premium Forms

| | |
|---|---|
| Borrower: Shirley Magee | File No.: 1661Earlham |
| Property Address: 1661 Earlham Drive | Case No.: |
| City: Dayton | State: OH      Zip: 45406 |
| Lender: WAYNE P. NOVICK | |



1661 Earlham Drive
Dayton, OH 45406

**APPRAISALS FIRST**

File No. 2734Oxford

APPRAISAL OF



**Single Family Property**

LOCATED AT:

2734 Oxford Avenue
Dayton, OH 45406

FOR:

WAYNE P. NOVICK
2135 Miamisburg-Centerville Road
Centerville, OH  45459

BORROWER:

Shirley Magee

AS OF:

November 8, 2012

BY:

Mel Rutherford

**Desktop Valuation**
**(Limited Appraisal/Summary Report)**

File No.  2734Oxford

Loan No.  _____

## CLIENT AND PROPERTY IDENTIFICATION

| | |
|---|---|
| Client/Lender: WAYNE P. NOVICK | Address: 2135 Miamisburg-Centerville Road, Centerville, OH 45459 |

| | | | |
|---|---|---|---|
| Property Address: 2734 Oxford Avenue | | | |
| City: Dayton | County: Montgomery | State: OH | Zip Code: 45406 |
| Borrower/Applicant: Shirley Magee | | Census Tract: 0000.00 | |
| Legal Description: 61461 PT | | | |
| Property Type: [X] SFR   [ ] PUD   [ ] Condominium | | Map Reference: Dayton City | |

The undersigned appraiser has performed a desktop valuation of the subject property. The purpose of this desktop valuation is to determine the market value of the subject property. The primary method of valuing the subject property is the sales comparison approach. This report is intended for use for loan purposes only and is limited to use by the above named client/lender; this report is not to be used for any other purpose, or by any other party. This report may be completed under the following circumstances: 1) when there is adequate comparable market data in the neighborhood to develop a reliable sales comparison analysis for the subject property; 2) when the property rights appraised are fee simple; and 3) zoning, if classified, is residential. The appraiser has made the extraordinary assumption that the subject property is an existing, legal single family dwelling in compliance with current zoning. The reliability of this valuation is considered to be impacted to a certain extent by the appraiser's lack of inspection of the subject property and the comparable sales.

## SALES COMPARISON ANALYSIS

| | Subject Property | Comparable 1 | Comparable 2 | Comparable 3 |
|---|---|---|---|---|
| Address | 2734 Oxford Avenue | 3303 Main St. | 2328 Eastview Ave. | 22-24 Woodcrest Ave. |
| Proximity to Subject | N/A | 3.1 Mile Northeast | 3.2 Mile Northeast | 2.4 Mile Northeast |
| Data Source | MLS,Pub.Rec. | MLS, Pub.Rec. | MLS, Pub.Rec. | MLS, Pub.Rec. |
| Sales Price | N/A | 38,500 | 30,000 | 24,750 |
| Date of Sale | N/A | 01/27/12 | 01/06/12 | 02/23/12 |
| Location | Dayton | Dayton | Dayton | Dayton |
| Site/View | Residential | Residential | Residential | Residential |
| Condition | Average | Average | Average | Average |
| Gross Living Area | 1560 | 2388 | 1375 | 2688 |
| Bedrooms/Baths | 2          2 | 5          3 | 2          2 | 6          2 |
| Age | 53 Years | 100+ Years | 62 Years | 85 Years |
| Garage/Carport | None | 2 Car Garage | None | 2 Car Garage |
| Basement | Full | Full | Full | Full |
| Porches, Patio, Pool | Stoop | Stoop | Stoop | Cov'd Porch |
| Amenities/Upgrades | Typical of Area | Typical of Area | Typical of Area | Typical of Area |
| Other | None | None | None | None |
| Overall Comparison | | Similar | Similar | Similar |

### Relative Comparison Analysis

Comments:   Due to a lack of sales activity of duplex properties the search was extended outward. All comparable sales were taken from the subject general market area and were selected for their location, design and similar amenitites. All comparable sales were correlated for an indication  of market value.

The appraiser has researched the sales and listing history of the subject property for the past three years:

[X] The property has not transferred ownership or been listed for sale during this period.

[ ] The subject was [ ] sold [ ] listed for $          on the date

Comments:

My opinion of the market value of the subject property is $ 32,000          , as of  November 8, 2012          , which is the effective date of this desktop analysis.

File No. __2734Oxford__

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and acting in what they consider their own best interests; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing  or sales concessions granted by anyone associated with the sale.

### STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:**  The appraiser's certification that appears in this limited residential appraisal and summary report is subject to the following conditions:

1. This limited residential appraisal and summary report invokes the Departure Provision of the Uniform Standards of Professional Appraisal Practices Standards Rule 1-4. In this report, any reference to the term "report" means: limited residential appraisal and summary report. Because the income approach to value is generally not considered applicable to the market valuation of residential properties, the exclusion of the income approach is not considered a Departure. The cost approach to value is considered of secondary importance in the valuation of residential property, therefore, its exclusion is considered a Departure.  Because the sales comparison approach to value is the most reliable indicator of market value, the appraiser has determined that the exclusion of the cost approach to value will not result in a report that is misleading to the client.

2. The HIGHEST AND BEST USE as improved is the present use, based on the residential zoning and the appraiser's familiarity with the residential nature of the subject's neighborhood. This is the reasonably probable and legal use that is physically possible, appropriately supported, financially feasible, and results in the highest value.

3. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser has made the extraordinary assumption that the title is good marketable and, therefore, will not render any opinions about the title. The property is appraised on the additional extraordinary assumption of its being under responsible ownership.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable. The appraiser has made the extraordinary assumption that there are no such conditions and makes no guarantees or warranties, expressed or implied, regarding the condition of the property.  The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this report must not be considered as an environmental assessment of the property. If the subject property was built prior to 1978, the dwelling may contain lead-based paint.

6. Information regarding the subject's physical characteristics was obtained either from information supplied on the appraisal request or from third party sources that the appraiser considers to be reliable and believes the data to be true and correct. The appraiser does not assume responsibility for the accuracy of such data that were furnished by other parties.

7. The appraiser will not disclose the contents of this report except as provided for in the Uniform Standards of Professional Appraisal Practice.

8. The appraiser must provide his or her prior written consent before the lender/client specified in this report can distribute this report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgage or its successors and assigns; the mortgage insurer; consultants; professional appraisal organization; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of this report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the report can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

**SCOPE OF WORK PERFORMED:**

I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis. Differences in the subject and comparables were analyzed to arrive at a value conclusion in this report. Utilizing the Sales Comparison Approach, I placed most emphasis on the comparable(s) considered to be most similar to the subject.

I have taken into consideration the factors that I am aware of that have an impact on value in my development of the value conclusion presented in this report. I have not knowingly withheld any significant information from this report.

Based on prior agreement with the client, an inspection of the property, the Cost Approach and Income Approach were excluded from this report. I have considered these exclusions and determined that the exclusion of an inspection, the Cost Approach and the Income Approach would not result in a report that is misleading to the client.

Although I have not personally inspected the subject property and the properties utilized as comparables in this report, I certify that I have no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions within the immediate vicinity of the subject property.

**APPRAISER'S CERTIFICATION:**  I certify that, to the best of my knowledge:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analysis, opinions, and conclusions.

3. I have no present or prospective interest in the property that is the subject of this report, and no personal interest or bias with respect to the parties involved.

4. I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

5. My engagement in this assignment was not contingent upon developing or reporting predetermined results.

6. My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurence of a subsequent event directly related to the intended use of this appraisal.

7. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the  *Uniform Standards of Professional Appraisal Practice.*

8. I have not made a personal inspection of the property that is the subject of this report.

9. No one provided significant real property assistance to the person signing this certification.

**APPRAISER:**

Signature: *Mel Rutherford*

Name: Mel Rutherford

Date Signed: 11/08/2012

State Certification #: 396696

or State License #: _____   State: OH

Expiration Date of Certification or License: 08-09-13

**Address of Appraised Property:** 2734 Oxford Avenue, Dayton, OH 45406

**Appraised Value of Property:** $ 32,000               **Effective Date of Appraisal:** November 8, 2012

Premium Forms

| | |
|---|---|
| Borrower: Shirley Magee | File No.: 2734Oxford |
| Property Address: 2734 Oxford Avenue | Case No.: |
| City: Dayton | State: OH | Zip: 45406 |
| Lender: WAYNE P. NOVICK | |



2734 Oxford Avenue
Dayton, OH 45406

**APPRAISALS FIRST**

File No. 4501Main

APPRAISAL OF



**Single Family Property**

LOCATED AT:

4501 N. Main Street
Dayton, OH 45405

FOR:

WAYNE P. NOVICK
2135 Miamisburg-Centerville Road
Centerville, OH  45459

BORROWER:

Shirley Magee

AS OF:

November 8, 2012

BY:

Mel Rutherford

**Desktop Valuation**
**(Limited Appraisal/Summary Report)**

File No. 4501Main
Loan No. _____

## CLIENT AND PROPERTY IDENTIFICATION

| | |
|---|---|
| Client/Lender:WAYNE P. NOVICK | Address: 2135 Miamisburg-Centerville Road, Centerville, OH 45459 |

Property Address:4501 N. Main Street

| | | | |
|---|---|---|---|
| City:Dayton | County:Montgomery | State: OH | Zip Code:45405 |
| Borrower/Applicant:Shirley Magee | | Census Tract: 0000.00 | |

Legal Description: 11-12 PT FOREST VIEW

Property Type: [X] SFR  [ ] PUD  [ ] Condominium   Map Reference:Dayton City

The undersigned appraiser has performed a desktop valuation of the subject property. The purpose of this desktop valuation is to determine the market value of the subject property. The primary method of valuing the subject property is the sales comparison approach. This report is intended for use for loan purposes only and is limited to use by the above named client/lender; this report is not to be used for any other purpose, or by any other party. This report may be completed under the following circumstances: 1) when there is adequate comparable market data in the neighborhood to develop a reliable sales comparison analysis for the subject property; 2) when the property rights appraised are fee simple; and 3) zoning, if classified, is residential. The appraiser has made the extraordinary assumption that the subject property is an existing, legal single family dwelling in compliance with current zoning. The reliability of this valuation is considered to be impacted to a certain extent by the appraiser's lack of inspection of the subject property and the comparable sales.

## SALES COMPARISON ANALYSIS

| | Subject Property | Comparable 1 | Comparable 2 | Comparable 3 |
|---|---|---|---|---|
| Address | 4501 N. Main Street | 865 N. Main St. | 5558 Wadsworth Rd. | 7821 N. Dixie Dr. |
| Proximity to Subject | N/A | 2.9 Mies South | 3.2 Miles Northeast | 3.6 Miles Northeast |
| Data Source | MLS,Pub.Rec. | MLS, Pub.Rec. | MLS, Pub.Rec. | MLS, Pub.Rec. |
| Sales Price | N/A | 80,000 | 72,345 | 60,000 |
| Date of Sale | N/A | 05/24/12 | 12/27/10 | 06/30/11 |
| Location | Dayton | Dayton | Dayton | Dayton |
| Site/View | Office/Residential | Office/Residential | Office/Residential | Office/Residential |
| Condition | Average | Average | Average | Average |
| Gross Living Area | 2480 | 2049 | 3800 | 1538 |
| Bedrooms/Baths | N/A       N/A | N/A       N/A | N/A       N/A | N/A       N/A |
| Age | 70 Years | 42 Years | 34 Years | 36 Years |
| Garage/Carport | None | None | None | None |
| Basement | None | None | None | None |
| Porches, Patio, Pool | Cov'd Porch | Stoop | Cov'd Porch | Stoop |
| Amenities/Upgrades | Typical of Area | Typical of Area | Typical of Area | Typical of Area |
| Other | None | None | None | None |
| Overall Comparison | | Similar | Similar | Similar |

**Relative Comparison Analysis**

Comments:   Do to a lack of sales activity of properties zoned for office use the search was outward and back in time.All comparable sales were taken from the subject market area and were selected for their location, design and similar amenitites. All comparable sales were correlated for an indication  of market value.

The appraiser has researched the sales and listing history of the subject property for the past three years:

[X] The property has not transferred ownership or been listed for sale during this period.

[ ] The subject was [ ] sold [ ] listed for $ _____ on the date _____

Comments:

My opinion of the market value of the subject property is $ 60.000-65,000        , as of  November 8, 2012        , which is the effective date of this desktop analysis.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and acting in what they consider their own best interests; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing  or sales concessions granted by anyone associated with the sale.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:**  The appraiser's certification that appears in this limited residential appraisal and summary report is subject to the following conditions:

1. This limited residential appraisal and summary report invokes the Departure Provision of the Uniform Standards of Professional Appraisal Practices Standards Rule 1-4. In this report, any reference to the term "report" means: limited residential appraisal and summary report. Because the income approach to value is generally not considered applicable to the market valuation of residential properties, the exclusion of the income approach is not considered a Departure. The cost approach to value is considered of secondary importance in the valuation of residential property, therefore, its exclusion is considered a Departure.  Because the sales comparison approach to value is the most reliable indicator of market value, the appraiser has determined that the exclusion of the cost approach to value will not result in a report that is misleading to the client.

2. The HIGHEST AND BEST USE as improved is the present use, based on the residential zoning and the appraiser's familiarity with the residential nature of the subject's neighborhood. This is the reasonably probable and legal use that is physically possible, appropriately supported, financially feasible, and results in the highest value.

3. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser has made the extraordinary assumption that the title is good marketable and, therefore, will not render any opinions about the title. The property is appraised on the additional extraordinary assumption of its being under responsible ownership.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable. The appraiser has made the extraordinary assumption that there are no such conditions and makes no guarantees or warranties, expressed or implied, regarding the condition of the property.  The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this report must not be considered as an environmental assessment of the property. If the subject property was built prior to 1978, the dwelling may contain lead-based paint.

6. Information regarding the subject's physical characteristics was obtained either from information supplied on the appraisal request or from third party sources that the appraiser considers to be reliable and believes the data to be true and correct. The appraiser does not assume responsibility for the accuracy of such data that were furnished by other parties.

7. The appraiser will not disclose the contents of this report except as provided for in the Uniform Standards of Professional Appraisal Practice.

8. The appraiser must provide his or her prior written consent before the lender/client specified in this report can distribute this report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organization; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of this report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the report can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

**SCOPE OF WORK PERFORMED:**

I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis. Differences in the subject and comparables were analyzed to arrive at a value conclusion in this report. Utilizing the Sales Comparison Approach, I placed most emphasis on the comparable(s) considered to be most similar to the subject.

I have taken into consideration the factors that I am aware of that have an impact on value in my development of the value conclusion presented in this report. I have not knowingly withheld any significant information from this report.

Based on prior agreement with the client, an inspection of the property, the Cost Approach and Income Approach were excluded from this report. I have considered these exclusions and determined that the exclusion of an inspection, the Cost Approach and the Income Approach would not result in a report that is misleading to the client.

Although I have not personally inspected the subject property and the properties utilized as comparables in this report, I certify that I have no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions within the immediate vicinity of the subject property.

**APPRAISER'S CERTIFICATION:**  I certify that, to the best of my knowledge:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analysis, opinions, and conclusions.

3. I have no present or prospective interest in the property that is the subject of this report, and no personal interest or bias with respect to the parties involved.

4. I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

5. My engagement in this assignment was not contingent upon developing or reporting predetermined results.

6. My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurence of a subsequent event directly related to the intended use of this appraisal.

7. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the  *Uniform Standards of Professional Appraisal Practice.*

8. I have not made a personal inspection of the property that is the subject of this report.

9. No one provided significant real property assistance to the person signing this certification.

**APPRAISER:**

Signature: *Mel Rutherford*

Name: Mel Rutherford

Date Signed: 11/08/2012

State Certification #: 396696

or State License #: _____    State: OH

Expiration Date of Certification or License: 08-09-13

**Address of Appraised Property:** 4501 N. Main Street, Dayton, OH 45405

**Appraised Value of Property:** $ 60.000-65,000        **Effective Date of Appraisal:** November 8, 2012

| Borrower: Shirley Magee | | File No.: 4501Main |
| Property Address: 4501 N. Main Street | | Case No.: |
| City: Dayton | State: OH | Zip: 45405 |
| Lender: WAYNE P. NOVICK | | |



4501 N. Main Street
Dayton. OH 45405





Home  **Property Search**  Value Dispute  GIS / Real Estate Downloads

**Address**  **Owner Name**  **Parcel**  **Advanced**  **Land Use Codes**

- ▶ Summary
- Property Description
- Tax Summary
- Levy Distribution
- New Levies
- Special Assessments
- Permits
- Value History
- Rental Registration
- Sketch
- Sales
- Photo

**PARID: R72 07011 0047**
**PARCEL LOCATION: 518 DELAWARE AVE**

**NBHD CODE: C8000000**

Tax Year: 2012

CURRENT RECORD

|◀ ◀ 1 of 1 ▶ ▶|

**Return to Search Results**

## Owner

Name

MAGEE SHIRLEY L

## Mailing

| | |
|---|---|
| Name | SHIRLEY L MAGEE |
| Mailing Address | 1661 EARLHAM DR |
| City, State, Zip | DAYTON, OH 45406 |

🗺 **Maps**

💲 **Pay Taxes**

🖨 **Printable Version**

## Legal

| | |
|---|---|
| Legal Description | 33311 & VAC ALLEY |
| | |
| Land Use Description | C - APARTMENTS 4-19 RENTAL UNITS |
| Acres | 0 |
| Deed | 1998-00672B007 |
| Tax District Name | DAYTON CITY |

## Sales

| Date | Sale Price | Deed Reference | Seller | Buyer |
|---|---|---|---|---|
| 22-FEB-85 | $49,415 | | | |
| 27-SEP-85 | $49,000 | | | |
| 09-DEC-87 | $59,900 | | | |
| 05-OCT-98 | $64,000 | | | |

## Values

******** TENTATIVE VALUES ********

| | 100% | 35% |
|---|---|---|
| Assessed Values | | |
| Land | $4,550 | $1,590 |
| Improvements | $60,140 | $21,050 |
| CAUV | $0 | $0 |
| Total | $64,690 | $22,640 |

******** TENTATIVE VALUES ********

## Current Year Special Assessments

| | |
|---|---|
| 33203-DAYTON RE-INSPECTION | $78.75 |

## Current Year Rollback Summary

| | |
|---|---|
| 10% Rollback | $0.00 |
| 2.5% Rollback | $0.00 |
| Homestead | $0.00 |
| City of Dayton Credit | $0.00 |
| Reduction Factor | $0.00 |

## Tax Summary

| Year | Prior Year | Prior Year Payments | 1st Half Due 2/17/2012 | 1st Half Payments | 2nd Half Due 7/13/2012 | 2nd Half Payments | Total Currently Due |
|---|---|---|---|---|---|---|---|
| 2012 | $21,178.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $21,178.40 |

25



Data Copyright Montgomery County [Disclaimer]  [Privacy Policy]

Site Design Copyright 1999-2006 Akanda Group LLC. All rights reserved.

**Desktop Valuation**
**(Limited Appraisal/Summary Report)**

File No. 1500Harvard
Loan No. _____

## CLIENT AND PROPERTY IDENTIFICATION

| | |
|---|---|
| Client/Lender:WAYNE P. NOVICK | Address: 2135 Miamisburg-Centerville Road, Centerville, OH 45459 |

| | | | |
|---|---|---|---|
| City:Dayton | County:Montgomery | State: OH | Zip Code:45406 |

Property Address:1500 Harvard Blvd.

| | |
|---|---|
| Borrower/Applicant:Shirley Magee | Census Tract: 0000.00 |

Legal Description: 30507-PT&VAC ALY

Property Type: [X] SFR    [ ] PUD    [ ] Condominium    Map Reference:Dayton City

The undersigned appraiser has performed a desktop valuation of the subject property. The purpose of this desktop valuation is to determine the market value of the subject property. The primary method of valuing the subject property is the sales comparison approach. This report is intended for use for loan purposes only and is limited to use by the above named client/lender; this report is not to be used for any other purpose, or by any other party. This report may be completed under the following circumstances: 1) when there is adequate comparable market data in the neighborhood to develop a reliable sales comparison analysis for the subject property; 2) when the property rights appraised are fee simple; and 3) zoning, if classified, is residential. The appraiser has made the extraordinary assumption that the subject property is an existing, legal single family dwelling in compliance with current zoning. The reliability of this valuation is considered to be impacted to a certain extent by the appraiser's lack of inspection of the subject property and the comparable sales.

## SALES COMPARISON ANALYSIS

| | Subject Property | Comparable 1 | Comparable 2 | Comparable 3 |
|---|---|---|---|---|
| Address | 1500 Harvard Blvd. | 2916 N. Main St. | 1923 Auburn Ave. | 450 Burman Ave. |
| Proximity to Subject | N/A | 1.6 Mile Northeast | .57 Mile Northwest | 4.8 Miles Northwest |
| Data Source | MLS,Pub.Rec. | MLS, Pub.Rec. | MLS, Pub.Rec. | MLS, Pub.Rec. |
| Sales Price | N/A | 67,000 | 54,000 | 40,000 |
| Date of Sale | N/A | 07/12/11 | 10/22/12 | 10/26/12 |
| Location | Dayton | Dayton | Dayton | Dayton |
| Site/View | Residential | Residential | Residential | Residential |
| Condition | Average | Average | Average | Average |
| Gross Living Area | 3576 | 2800 | 3480 | 3082 |
| Bedrooms/Baths | 6          4 | 4          4 | 4          4 | 4          4 |
| Age | 72 Years | 61 Years | 68 Years | 49 Years |
| Garage/Carport | 2 Car Garage | None | None | None |
| Basement | None | Full | Full | None |
| Porches, Patio, Pool | Cov'd Porch | Stoop | Stoop | Stoop |
| Amenities/Upgrades | Typical of Area | Typical of Area | Typical of Area | Typical of Area |
| Other | None | None | None | None |
| Overall Comparison | | Similar | Similar | Similar |

**Relative Comparison Analysis**

Comments:   Due toa a lack of sales activity of four unit properties the search was extended outward and back in time. All comparable sales were taken from the subject market area and were selected for their location, design and similar amenitites. All comparable sales were correlated for an indication  of market value.

The appraiser has researched the sales and listing history of the subject property for the past three years:

[X] The property has not transferred ownership or been listed for sale during this period.

[ ] The subject was [ ] sold [ ] listed for $ _____ on the date _____

Comments:

My opinion of the market value of the subject property is $ 56,000          , as of  November 8, 2012          , which is the effective date of this desktop analysis.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and acting in what they consider their own best interests; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in this limited residential appraisal and summary report is subject to the following conditions:

1. This limited residential appraisal and summary report invokes the Departure Provision of the Uniform Standards of Professional Appraisal Practices Standards Rule 1-4. In this report, any reference to the term "report" means: limited residential appraisal and summary report. Because the income approach to value is generally not considered applicable to the market valuation of residential properties, the exclusion of the income approach is not considered a Departure. The cost approach to value is considered of secondary importance in the valuation of residential property, therefore, its exclusion is considered a Departure. Because the sales comparison approach to value is the most reliable indicator of market value, the appraiser has determined that the exclusion of the cost approach to value will not result in a report that is misleading to the client.

2. The HIGHEST AND BEST USE as improved is the present use, based on the residential zoning and the appraiser's familiarity with the residential nature of the subject's neighborhood. This is the reasonably probable and legal use that is physically possible, appropriately supported, financially feasible, and results in the highest value.

3. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser has made the extraordinary assumption that the title is good marketable and, therefore, will not render any opinions about the title. The property is appraised on the additional extraordinary assumption of its being under responsible ownership.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable. The appraiser has made the extraordinary assumption that there are no such conditions and makes no guarantees or warranties, expressed or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this report must not be considered as an environmental assessment of the property. If the subject property was built prior to 1978, the dwelling may contain lead-based paint.

6. Information regarding the subject's physical characteristics was obtained either from information supplied on the appraisal request or from third party sources that the appraiser considers to be reliable and believes the data to be true and correct. The appraiser does not assume responsibility for the accuracy of such data that were furnished by other parties.

7. The appraiser will not disclose the contents of this report except as provided for in the Uniform Standards of Professional Appraisal Practice.

8. The appraiser must provide his or her prior written consent before the lender/client specified in this report can distribute this report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgage or its successors and assigns; the mortgage insurer; consultants; professional appraisal organization; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of this report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the report can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

### SCOPE OF WORK PERFORMED:

I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis. Differences in the subject and comparables were analyzed to arrive at a value conclusion in this report. Utilizing the Sales Comparison Approach, I placed most emphasis on the comparable(s) considered to be most similar to the subject.

I have taken into consideration the factors that I am aware of that have an impact on value in my development of the value conclusion presented in this report. I have not knowingly withheld any significant information from this report.

Based on prior agreement with the client, an inspection of the property, the Cost Approach and Income Approach were excluded from this report. I have considered these exclusions and determined that the exclusion of an inspection, the Cost Approach and the Income Approach would not result in a report that is misleading to the client.

Although I have not personally inspected the subject property and the properties utilized as comparables in this report, I certify that I have no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions within the immediate vicinity of the subject property.

**APPRAISER'S CERTIFICATION:** I certify that, to the best of my knowledge:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analysis, opinions, and conclusions.

3. I have no present or prospective interest in the property that is the subject of this report, and no personal interest or bias with respect to the parties involved.

4. I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

5. My engagement in this assignment was not contingent upon developing or reporting predetermined results.

6. My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurence of a subsequent event directly related to the intended use of this appraisal.

7. My analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the *Uniform Standards of Professional Appraisal Practice.*

8. I have not made a personal inspection of the property that is the subject of this report.

9. No one provided significant real property assistance to the person signing this certification.

**APPRAISER:**

Signature: *Mel Rutherford*

Name: Mel Rutherford
Date Signed: 11/08/2012
State Certification #: 396696
or State License #: _____ State: OH
Expiration Date of Certification or License: 08-09-13
**Address of Appraised Property:** 1500 Harvard Blvd., Dayton, OH 45406
**Appraised Value of Property:** $ 56,000 **Effective Date of Appraisal:** November 8, 2012

Premium Forms

| Borrower: Shirley Magee | File No.: 1500Harvard |
| --- | --- |
| Property Address: 1500 Harvard Blvd. | Case No.: |
| City: Dayton | State: OH | Zip: 45406 |
| Lender: WAYNE P. NOVICK | |



1500 Harvard Blvd.
Dayton, OH 45406

**APPRAISALS FIRST**

File No. 1500Harvard

APPRAISAL OF



**Single Family Property**

LOCATED AT:

1500 Harvard Blvd.
Dayton, OH 45406

FOR:

WAYNE P. NOVICK
2135 Miamisburg-Centerville Road
Centerville, OH  45459

BORROWER:

Shirley Magee

AS OF:

November 8, 2012

BY:

Mel Rutherford